UNDERWOOD TYPEWRITER CO. v. TYPEWRITER INSPECTION CO.

(Circuit Court of Appeals, Second Circuit. July 5, 1910.)

No. 218.

PATENTS (§ 328*)—INFRINGEMENT—TYPEWRITING MACHINES.

The Wagner patent, No. 523,698, and the Wagner and Wagner patent, No. 559,345, both for improvements in typewriting machines, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Suit by the Underwood Typewriter Company against the Typewriter Inspection Company. Decree for defendant, and complainant appeals. Affirmed.

On appeal from a decree dismissing the bill in a suit for infringement of two letters patent owned by complainant, and granted, respectively, to H. L. Wagner, assignor to Franz X. Wagner, and to H. L. and F. X. Wagner, for improvements in typewriting machines. The first of these, No. 523,698 called the senior patent, was granted July 31, 1894, claims 1, 3 and 11 being in issue. The second, No. 559,345, called the junior patent, was granted April 28, 1896, claim 26 being in issue.

The defendant is the seller of the alleged infringing machines manufactured by E. C. Stearns & Co. The Stearns Company is defendant in a companion suit involving identical issues and counsel have stipulated on the record that the testimony in the above-entitled action shall also be the testimony in the action pending against the Stearns Company.

The Circuit Court, apparently with considerable hesitation, held that claim 3 of the senior patent and claim 26 of the junior patent were valid, but that neither was infringed.

Arthur v. Briesen and Eugene Eble, for appellant.

J. Edgar Bull and Alfred Wilkinson, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. As we agree in thinking that none of the claims is infringed we will confine what we have to say to the defense of noninfringement.

The claims of the senior patent, which are in controversy, are as follows:

"1. The combination, with a suitably actuated type-bar provided with a plurality of type, of a platen or paper carriage made vertically shiftable in a rectilinear direction so as to bring the paper to the printing points of the various types, movable arms C″ located on opposite sides of the machine and on which the carriage permanently rests and independent levers for shift-

ing the arms, and a detent for holding the carriage after being shifted or raised, substantially as described."

"3. The combination with a suitably actuated type-bar of a platen or paper carriage, movable legs for the carriage, arms C″ made to engage said legs, a rock shaft to which said arms are fixed, an actuating lever for each of said arms, and a detent for engaging one of said arms, the actuating lever of said last named arm being made to engage the detent to release the latter, substantially as described."

"11. The combination with a suitably actuated type-bar provided with a plurality of type, and a pivot about which the type bar swings, of a platen or paper carriage made vertically shiftable so as to bring the paper to the printing points of the various types, movable arms C″ located on opposite sides of the machine and on which the platen permanently rests, and independent levers for shifting the arms, said levers being loose or detached from the arms C″ so that the latter can move independently of the levers, substantially as described."

The claim of the junior patent is as follows:

"26. A suitably-actuated type-arm provided with a plurality of type, in combination with a vertically-movable platen, oppositely-located keys for moving said platen, a lock for one of said keys, said lock having a releasing-arm actuated by another of said keys and a rock-shaft to opposite end portions of which said lock and releasing arm are fixed, substantially as described."

The elements of the combination of the first claim are:

First. A suitably actuated type-bar provided with a plurality of type.

Second. A platen or paper carriage made vertically shiftable in a rectilinear direction.

Third. Movable arms C″ located on opposite sides of the machine and on which the carriage permanently rests.

Fourth. Independent levers for shifting the arms.

Fifth. A detent for holding the carriage after being shifted or raised.

The elements of the third claim are:

First. A suitably actuated type-bar.

Second. A platen or paper carriage.

Third. Movable legs for the carriage.

Fourth. Arms C″ made to engage said legs.

Fifth. A rock shaft to which said arms are fixed.

Sixth. An actuating lever for each of said arms, one of said levers being made to engage a detent.

Seventh. A detent for engaging one of said arms.

The elements of the eleventh claim are:

First. A suitably actuated type-bar provided with a plurality of type.

Second. A pivot about which the type-bar swings.

Third. A platen or paper carriage made vertically shiftable.

Fourth. Movable arms C″ located on opposite sides of the machine on which the platen permanently rests.

Sixth. Independent levers for shifting the arms C″, said levers being loose or detached from the arms C″ so that they can move independently of the levers.

The elements of claim 26 of the junior patent are:

First. A suitably actuated type-arm provided with a plurality of type.

Second. A vertically movable platen.

Third. Oppositely located keys for moving said platen.

Fourth. A lock for one of said keys, said lock having a releasing arm actuated by another of said keys.

Fifth. A rock shaft, to opposite end portions of which said lock and releasing arm are fixed.

Long prior to July, 1894, the typewriting art had advanced to a high state of perfection. Neither of the complainant's patents is generic; both relate to comparatively unimportant improvements. A broad construction of the claims is, therefore, unwarranted.

The defendant's machine does not infringe claim 1 of the senior patent because it does not have the vertically shiftable platen or paper carriage which is the second element of the combination of that claim. In the defendant's machine the carriage moves horizontally, but not vertically or in a rectilinear direction. The difference in the movement of the platen of the patent and of the defendant's machine might be disregarded were it not for the fact that the words "in a rectilinear direction" were inserted after the claim had been rejected on the patent to Mulligan, cited by the examiner.

The defendant does not have the third element of the claim for the reason that its carriage does not rest permanently on movable arms located on opposite sides of the machine or, indeed, on movable arms of any kind.

The defendant does not have the independent shifting levers of the fourth element, but parts known as permanent and temporary shift keys, located one above the other on the extreme right of the keyboard. The permanent shift key is not a lever, but is used to depress and hold in a depressed position the temporary shift key which is used to release the permanent shift key, the latter being dependent upon the former. It cannot therefore be regarded as one of the "independent levers" of the claim for reasons that it is not a lever and it is not independent.

The defendant does not have the "detent for holding the carriage" unless the permanent shift key can be so considered.

But this argument of the complainant is fatal to its contention that the same part may be a detent, and an independent lever. Either the fourth or the fifth element of the claim is lacking.

If we assume that the permanent shift key is a detent for holding the carriage by the temporary shift key lever, we cannot say that it is independent of that lever. If it be independent it is not a detent. Furthermore, it does not hold the carriage in a shifted position. It does hold the platen, but "platen" and "carriage" are not equivalent terms, in this controversy at least, for the reason that the patentee only succeeded in getting the claim allowed by consenting to the substitution of the latter word for the former, thus limiting the claim to a structure where the carriage, including the platen, is held by the detent and not the platen alone. In August, 1893, the examiner wrote:

"The word, 'platen' should read 'carriage' in line 5, claim 1."

To this the attorneys replied:

"Claim 1, line 5, change 'platen' to 'carriage.'"

Having consented to this change in order to secure the claim they now seek to have the claim construed precisely as it was before the change was made.  This cannot be done.

The defendant's machine does not infringe the third claim.  Here, again, we have the self-imposed limitation—the patentee consenting to the substitution of "carriage" for "platen."

As before stated these words cannot be regarded as synonymous, on the contrary, each must be construed to refer, respectively, to the "carriage C" and the "platen A" of the patent.  The defendant does not have the "movable legs," or "movable arms," which constitute the third and fourth elements of the claim for the reason that its carriage is never shifted in the sense of the patent, but rests on stationary horizontal tracks, upon which it travels.  As it has no movable legs it can have no movable arm to engage "said legs."  Defendant's arms do not support the carriage, but only the platen, and are in no way connected with the guides which are said to be the movable legs and, of course, do not "engage" them.  The seventh element of the claim is also absent in defendant's machine.  The arms which support the platen are at the top of the machine and cannot engage with a detent which, in both structures, is at the bottom of the machine.  In the patented structure one of the arms C″ engages directly with the detent, but by no possibility can either of the arms 41 41 which support the platen and which, complainant contends, are the equivalents for the arms C″ of the patent, engage with the detent of defendant's machine.

The defendant does not infringe claim 11 of the senior patent for the reason that it does not have the fourth and fifth elements thereof.  The claim was rejected on reference to the Mulligan patent and was only allowed after the patentee had limited it by adding thereto the words "said levers being loose or detached from the arms C″ so that the latter can move independently of the levers."

The defendant does not have this added function.

The defendant does not infringe claim 26 of the junior patent for the reason that it does not have the third, fourth and fifth elements thereof.  The claim as originally filed was much broader than as allowed.  By amendment the keys must be "oppositely located," and the combination was enlarged to include "a rockshaft to opposite end portions of which said lock and releasing arm are fixed."

The defendant's machine does not have oppositely located keys, one of them having a lock and the other an arm, which, when the key is pressed down, releases the lock.  The permanent and temporary shift keys at the lower right hand corner of the defendant's structure do not answer the claim because they are located as near each other as it is possible to place them.  It cannot be that said phrase "oppositely located" imposes an unnecessary limitation on the claim; the patentee could not have obtained the claim without it.  Again, the defendant does not use a lock for one of said keys which is unlocked by a releasing arm actuated by the other key, nor does it have a rock-shaft to opposite end portions of which said lock and releasing arm are fixed.  In the patented structure there is a spring actuated rock-shaft extending across the entire front of the machine from the temporary shift key on the extreme left to the permanent shift key on the extreme

right. When the permanent key is depressed a detent on the rock-shaft is sprung into a notch on the upright of the key which is held in this position until the temporary key at the extreme left of the machine is depressed, by which action the permanent shift key is released.

The defendant has no such mechanism.

We cannot resist the conclusion that the complainant is attempting to broaden the claims in controversy in a manner not justified by the position of the patentees in the art. Their machines are, no doubt, ingenious and successful, but so are those of the defendant, and we see no reason why the latter should pay tribute to the former. In the nature of the case, both being typewriters, many similarities are observable between the two machines, but we are confident that the defendant has not used the combinations covered by the claims in controversy.

The decree is affirmed with costs.